IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMY MATTSON, | ) |
| Claimant, | ) No. 16 C 10533 |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) |
| Commissioner. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Carmy Mattson ("Claimant") seeks review of the final decisions of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 10.]

Claimant and the Commissioner have moved for summary judgment. [ECF Nos. 22, 26.] For the reasons stated below, Claimant's Motion for Summary Judgment is granted and the Commissioner's Motion for Summary Judgment is denied. The decision of the ALJ is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Colvin is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed an application for DIB on July 28, 2014, alleging a disability onset date of April 17, 2014.[2] (R. 18.) The claim was initially denied on January 29, 2015, and upon reconsideration on August 18, 2015. (*Id.*) Claimant then filed a request for an administrative hearing on August 21, 2015. (R. 135–36.) On April 12, 2016, Claimant, represented by a non-attorney, appeared and testified before an Administrative Law Judge ("the ALJ"). (R. 39–75.) A Vocational Expert ("the VE") also testified. (R. 67–73.)

On May 12, 2016, the ALJ issued a written decision denying Claimant's application for DIB based on a finding that, from her alleged onset date through the date of her hearing, she was not disabled under the Act. (R. 15–31.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. As an initial matter, the ALJ noted that Claimant met the insured status requirements of the Act through December 31, 2016. (R. 20.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 17, 2014, the alleged onset date. (*Id.*) At step two, the ALJ found Claimant had the severe impairments of affective and anxiety-related disorders, osteopenia, arthritis, and chronic pain. (*Id.*) At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926) ("the Listings"). (R. 21.)

Before step four, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). (R. 23.) The ALJ also limited Claimant to work that involved no climbing of ladders, ropes, or scaffolds; only

---

[2] Claimant had filed a prior Title II application that alleged disability beginning August 12, 2011. (R. 18.) An ALJ denied that application in a hearing decision issued on April 16, 2014. (R. 18.) Claimant did not appeal that denial and it is not at issue here.

occasional climbing of ramps or stairs; occasional stopping and crouching; and no more than simple, routine, and repetitive tasks. (*Id.*) The ALJ further limited her to work environments free of fast-paced production requirements, involving only simple, work-related decisions, and having only few, if any, workplace changes; rare, if any, interaction with the public; and only occasional interaction with supervisors. (*Id.*) Based on this RFC determination, at step four the ALJ concluded that Claimant was not able to perform any past relevant work. (R. 29.) At step five, the ALJ considered whether Claimant could do any other work given her RFC, age, education, and work experience. (R. 30.) Based on these factors, the ALJ determined that there were jobs in significant numbers in the national economy that Claimant could perform. (*Id.*) Thus, the ALJ found that Claimant was not disabled under the Act. (R. 31.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1–4.) *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the ALJ's decision. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even

when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Yet the reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant argues that the ALJ made three errors. [*See* EFC No. 22.] First, Claimant asserts that the ALJ's decision to ascribe little weight to Claimant's treating doctors—Dr. Herschel Myron Weller, Claimant's treating physician, and Dr. Susanna Kovari, Claimant's treating psychiatrist—is not supported by substantial evidence. (*Id.* at 6.) Second, Claimant asserts that the ALJ's RFC determination is not supported by substantial evidence. (*Id.* at 11.) Third, Claimant asserts that the ALJ's assessment of Claimant's subjective reports of her symptoms is not supported by substantial evidence. (*Id.* at 16.) After reviewing the parties' briefs and the administrative record, the Court concludes that the ALJ's decision to give little weight to Dr. Kovari's opinion is not supported by substantial evidence. Therefore, remand is

4

appropriate. As to Dr. Weller, however, the Court affirms the ALJ's decision to give his opinion little weight.

### A. The ALJ's Decision to Give Little Weight to Dr. Kovari's Opinion is Not Supported by Substantial Evidence

Claimant argues that the ALJ's decision to give little weight to the opinion of Dr. Kovari, her treating psychiatrist, is not supported by substantial evidence. (*Id.* at 10–11.) Because treating sources[3] typically have greater familiarity with the claimant and her allegedly disabling conditions, their opinions are entitled to controlling weight if they are both "well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing 20 C.F.R. § 404.1527(c)(2)). If an ALJ rejects a treating source's opinion, she must sufficiently articulate her reasons for doing so. 20 C.F.R. § 404.1527(f)(2); *see also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005) ("The ALJ is required to 'articulate, at some minimum level, [her] analysis of the evidence.'") (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). Identifying specific inconsistencies between the evidence and the treating source's opinion may help to support an ALJ's decision to deny it controlling weight. *See Eakin v. Astrue*, 432 Fed. App'x. 607, 612 (7th Cir. 2011) ("An ALJ who declines to give controlling weight to the opinion of a treating physician must offer good reasons that are sufficiently specific in explaining what weight, if any, she assigned it.") (internal citations omitted).

Dr. Kovari started treating Claimant in July 2014. (R. 727.) She continued to see Claimant regularly throughout the adjudication period. (*See, e.g.*, R. 638, 666, 677, 703, 708.) On February 16, 2015, Dr. Kovari completed her Mental Impairment Questionnaire containing her opinion of Claimant's mental health. (R. 638–42.) As the ALJ recognized, Claimant's

---

[3] Treating sources include both treating physicians and treating psychiatrists. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010).

5

application relies largely on the mental limitations assessed in this opinion. (*See* R. 26 ("[T]here is a significant mental component to this claim in the record.").)

Notably, Dr. Kovari determined that Claimant was "[u]nable to meet competitive standards" in five different "mental abilities and aptitudes needed for unskilled work." (R. 640.) These includes the abilities and aptitudes: (1) to "[m]aintain regular attendance [and] be punctual within customary, usually strict tolerances;" (2) to "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms;" (3) to "[p]erform at a consistent pace without an unreasonable number and length of rest periods;" (4) to "[a]ccept instructions and respond appropriately to criticism from supervisors;" and (5) to "[d]eal with normal work stress."[4] (*Id.*) Dr. Kovari also anticipated that Claimant would regularly be absent from work due to her mental impairments or treatment more than three times per month. (R. 642.) At Claimant's administrative hearing, the VE testified essentially that if Dr. Kovari's opinion were given controlling weight as to the mental component of the ALJ's RFC determination, Dr. Kovari's severe findings would "eliminate the work [he] cited, and all other work," effectively rendering Claimant disabled. (R. 71–72.)

The ALJ asserted only one broad reason to support her conclusion that Dr. Kovari's opinion merited little weight: that it was "inconsistent with her own reported medical findings and the course of treatment she pursued." (R. 28.) Notwithstanding the deference owed to treating sources, the regulations that govern an ALJ's evaluation of medical opinions insist that a treating opinion not be given controlling weight if it is inconsistent with other substantial evidence in the record. *See* SSR 96-2p(4). The regulations also permit an ALJ to give less weight to a medical opinion that is not consistent with the record as a whole. *See* 20 C.F.R.

---

[4] This is not to mention the five additional abilities and aptitudes for unskilled work in which Dr. Kovari assessed Claimant to be "[s]eriously limited and unsatisfactory." *See id.*

§ 404.1527(c)(4). The question here is whether the specific inconsistencies that the ALJ found with respect to Dr. Kovari provide such relevant evidence as a reasonable mind might accept as adequate to support her conclusion that Dr. Kovari's opinion merited little weight.

The first inconsistency noted by the ALJ was that Dr. Kovari's treatment records reflect only moderate symptoms as well as mild improvement in symptoms with treatment. (R. 28.) Although the ALJ did not indicate which findings in Dr. Kovari's treatment records reflect moderate symptoms, it appears that one such finding must be Claimant's GAF score, which is addressed below. (*See id.*) Other findings might include, as the Commissioner suggested in her brief [*see* EFC No. 26 at 6], indications in Dr. Kovari's treatment notes that Claimant appeared "cooperative" and "oriented" and demonstrated "logical and coherent" thought processes, "intact" attention and judgement, and "grossly intact" memory at her sessions. (*See, e.g.*, R. 667, 677–78.) Yet Dr. Kovari's notes also demonstrate more severe symptoms, such as Claimant's "depressed, anxious, guilty and helpless" mood and her being in "distress," "crying," "agitated, fidgety, and frantic." (*See, e.g.*, R. 704.) On balance, Dr. Kovari's notes, like her opinion, reflect nuanced findings, not "only" moderate symptoms as the ALJ asserted. (R. 28.) Claimant is correct that, despite some generally moderate findings in Dr. Kovari's notes, the ALJ did not articulate why these findings undermine Dr. Kovari's opinion that Claimant cannot meet competitive standards for unskilled work. Although it is not this Court's role to re-weigh the evidence considered by the ALJ, the ALJ must articulate the evidence she relies upon to support her conclusion in a way this Court can understand and assess whether it is adequate to support her conclusion. *See Eakin*, 432 Fed. App'x. at 612 ("An ALJ who declines to give controlling weight to the opinion of a treating physician must offer good reasons that are sufficiently specific in explaining what weight, if any, she assigned it.") (internal citations omitted).

7

The ALJ also failed to point to evidence to support her conclusion that Dr. Kovari's treatment notes show mild improvement and stabilization. Again, the Commissioner suggested in her brief [*see* EFC No. 26 at 6] that the ALJ had in mind such indications in Dr. Kovari's treatment notes that Claimant's "participation level [was] full," her "adherence to the treatment regime" was full, and her "response to the medication [was] good." (*See, e.g.*, R. 691.) These indications, however, are also more complex than the ALJ suggested. More often than not, Dr. Kovari indicated that Claimant's response to treatment was only "fair." (*See, e.g.*, R. 708.) She also consistently indicated Claimant's mood as "depressed" and "labile" despite any positive treatment response. (*See, e.g.*, R. 678, 704.) In her post-hearing letter, Dr. Kovari further clarified that any findings of improvement and stability do not "indicate that [Claimant] is at her baseline level of functioning," and that Claimant "will continue to have fluctuations in her symptoms." (R. 727.) Although the ALJ said that Dr. Kovari's notes "document some improvement and stability," she did not articulate why these vague and limited findings contradict Dr. Kovari's nuanced opinion. (R. 28.) In sum, Dr. Kovari's treatment notes do not corroborate the ALJ's characterization of them as demonstrating meaningful improvement or stabilization. This reasoning also fails to contribute substantial evidence to support the ALJ's conclusion.

The second inconsistency noted by the ALJ was that Dr. Kovari indicated Claimant's current GAF score to be 51-60, "indicative of only moderate symptoms or moderate impairment of functioning" and "inconsistent with the extreme limitations that she assessed." (R. 28; *see also* R. 638.) However, the Seventh Circuit has recognized that while a GAF score may be "'useful for planning treatment,'" it does not necessarily reflect a claimant's functional level. *Carter v. Colvin*, 2016 WL 491640, at *4 (N.D. Ind. Feb. 8, 2016) (quoting *Denton v. Astrue*,

596 F.3d 419, 425 (7th Cir. 2010)). A GAF score as high as 60 is not inherently inconsistent with a treating psychiatrist's opinion that a claimant cannot meet competitive standards. *See id.* That Dr. Kovari recognized Claimant's GAF score to be at most 60 before assessing her inability to meet competitive standards for unskilled work suggests that Dr. Kovari did not believe this single fact to contradict her ensuing opinion. Because the ALJ did not articulate why Claimant's GAF score undermines Dr. Kovari's opinion, the Court again agrees with Claimant that the ALJ failed to build a logical connection from this evidence to her evaluation.

The third inconsistency noted by the ALJ was the moderate course of treatment that Dr. Kovari pursued with Claimant. (R. 28.) Once again, the ALJ did not point to evidence to support her conclusion that Claimant's psychiatric treatment was conservative, a finding that the record does not demonstrate. For example, Dr. Kovari's opinion shows that Claimant was prescribed three antidepressants in addition to regular psychotherapy treatment at the time. (R. 638.) Dr. Kovari's treatment records consistently reflect that Claimant was taking at least as many antidepressants, with frequent adjustments according to her response, throughout the adjudicatory period. (*See, e.g.*, R. 666–69, 691–94, 703–06, 708–11.) Progress reports from other psychiatrists reflect similar treatment. (*See, e.g.*, R. 396, 400, 559.) The ALJ conceded that the record reflects "fairly consistent mental health treatment for depressive and generalized anxiety disorders." (R. 26.) Moreover, as Claimant argues, the ALJ did not point to any evidence suggesting that Claimant should have pursued more aggressive treatment for her mental symptoms or that her treatment indicated only modest symptoms. Though the ALJ criticized Claimant for failing to engage in activities that could improve her mental health, she did not consider whether Claimant's failure could be related to her depression and anxiety. (*See* R. 26–

9

27.) In sum, the ALJ's conclusion that Claimant's psychiatric course of treatment weighs against Dr. Kovari's opinion is not supported by substantial evidence.

Additionally, the ALJ suggested that she found Dr. Kovari's opinion inconsistent with the mental health records of Claimant's non-treating psychiatrists. (*See* R. 26.) First, the ALJ pointed to evidence showing that Claimant's "mental health providers have consistently indicated only moderate symptoms," such as her "[GAF] scores of 51 to 60." (*Id.*) Again, however, the ALJ did not articulate why these scores undermine Dr. Kovari's opinion. The ALJ also asserted that Claimant's progress notes from her non-treating psychiatrists reflect "overall generally improving symptoms and stable mental status." (*Id.*) Once again, the ALJ did not point to specific evidence supporting this conclusion, which the record does not corroborate. While Dr. Catlin noted that Claimant's progress toward goals was often "[s]lightly [i]mproved," she also noted that Claimant demonstrated no "[n]otable change" in her "[m]ental [s]tatus" from visit to visit. (*See, e.g.*, R. 608.) Dr. Eisele consistently indicated that Claimant's response to treatment was "[p]oor" and her compliance to the treatment only "[p]atrial" or "[l]ow." (*See, e.g.*, R. 390, 435.) Dr. Utpal made similar findings. (*See, e.g.*, R. 493, 498.) In sum, these reasons do not provide such relevant evidence as a reasonable mind might accept as adequate to conclude that Dr. Kovari's opinion was inconsistent with the record as a whole.

The ALJ also pointed to indications from Claimant's non-treating psychiatrists that Claimant "consistently demonstrate[d] intact concentration, attention and memory on mental status examinations." (R. 26; *see also* R. 487, 498, 692.) As Claimant argues, however, the ALJ did not articulate a logical connection between this evidence and her decision to discount Dr. Kovari's opinion that Claimant cannot meet competitive standards in a workplace setting. It is unclear why moderate performance on mental status examinations demonstrates that Claimant

10

can perform at competitive levels in the abilities and aptitudes that Dr. Kovari assessed, such as dealing with normal work stress, completing a normal workweek without mental-health-related interruptions, and maintaining attendance on an ongoing basis. (*See* R. 640.) Nor is the Court persuaded by the other evidence that the ALJ suggested to be inconsistent with Dr. Kovari's opinion, including that Claimant has not required psychiatric hospitalization and did not provide objective evidence for her debilitating panic attacks. (*See* R. 26.) It is plausible that one may be unable to work but not need psychiatric hospitalization, and someone may experience panic attacks without having objective evidence of them. Without articulating why this evidence contradicts Dr. Kovari's opinion, the ALJ's decision to give it little weight is not supported by such relevant evidence as a reasonable mind might accept as adequate to support it.

For these reasons, the Court agrees with Claimant that the ALJ's conclusion that Dr. Kovari's opinion was inconsistent with her own treatment notes and with those of Claimant's non-treating psychiatrists is not supported by substantial evidence, at least as discussed by the ALJ in her opinion. The ALJ did not explain the perceived inconsistencies that she felt undermined Dr. Kovari's opinion. Because inconsistency was the sole reason that the ALJ gave to support her decision to give Dr. Kovari's opinion little weight, this decision lacks the requisite logical bridge. Therefore, remand is appropriate.

Before closing this section of the Opinion, the Court notes the Commissioner is correct that the determination of whether Claimant is able to perform work-related activities is left for the ALJ, not her treating physician or psychiatrist. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."). The Court's analysis of and conclusions about the ALJ's evaluation of Dr. Kovari's opinion should not be construed as an unquestioning acceptance of

Dr. Kovari's assessment of Claimant's ability to work over the ALJ's assessment. While the ALJ is not required to accept a treating psychiatrist's recommendation about a claimant's inability to work, she must articulate why she afforded the treater's opinion little weight. In the Court's view, the ALJ did not articulate the essential logical connection between the evidence and the limited weight she assigned Dr. Kovari's opinion in this case. That is why the Court has concluded that remand is the appropriate result here.

### B. The ALJ Properly Gave Little Weight to Dr. Weller's Opinion

Claimant also argues that the ALJ's decision to give little weight to the opinion of Dr. Weller, her treating physician, is not supported by substantial evidence. [EFC No. 22 at 6–10.] As explained above, a treating physician's opinion is entitled to controlling weight if it is both "well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(c)(2)). Dr. Weller began treating Claimant in the fall of 2010. (R. 340.) The record shows neither how often nor in what capacity Dr. Weller saw Claimant through 2012. The record does show that he saw her just once in 2013. (*See id.*) This visit occurred on January 21, 2013, during which Dr. Weller completed a progress report but not an examination of Claimant. (*See* R. 347–51.) Similarly, the record demonstrates that Dr. Weller saw Claimant just twice during the adjudicatory period—once in 2014 and once in 2015.[5] On July 10, 2014, Claimant met with Dr. Weller because she "mainly wanted to tell [him] about her recent experiences with other physicians and had questions about her medication." (R. 340.) Beyond taking her vital signs, Dr. Weller did not examine Claimant at this consultative visit. (R. 341.)

---

[5] In addition to these visits, the record reflects that Dr. Weller frequently referred Claimant to other doctors and reviewed her medical charts from 2013 onward. (*See, e.g.*, R. 313, 317, 334, 368–69, 511–12.)

12

The next visit was not until April 17, 2015, when Claimant asked Dr. Weller to complete the Physical Impairment Questionnaire containing his opinion. (R. 337; *see also* R. 643–46.) In this opinion, Dr. Weller found that Claimant had marked physical limitations, including, notably, that she can only sit for two hours and stand/walk (combined) for less than one hour in an eight-hour workday within a sustained, competitive work environment. (R. 644.) Dr. Weller also found that Claimant suffered from chronic low back pain, sciatica, and degenerative arthritis of the lumbar spine; (R. 643) that Claimant could not stoop, lift, or carry any weight; (R. 645) and that Claimant had effectively preclusive bilateral limitations in reaching, handling, and fingering. (R. 646.) Dr. Weller did not examine Claimant at this visit, either. (R. 337.)

The ALJ gave four reasons to support her decision to give Dr. Weller's opinion little, rather than controlling, weight, which track the factors of 20 C.F.R. § 404.1527(c) (entitled "How we [the Commissioners] weigh medical opinions"). *See* 20 C.F.R. § 404.1527(c). The first reason she noted went to the "[l]ength of the treatment relationship" between Dr. Weller and Claimant as well as "the frequency of examination." 20 C.F.R. § 404.1527(c)(2)(i); (c)(2)(ii). (*See also* R. 27.) Though Dr. Weller began to see Claimant in 2010 and became her treating physician, he saw her only twice in the adjudicatory period and once in the 16 prior months. (*See* R. 336, 340.) The record also supports the ALJ's finding that Dr. Weller did not examine Claimant during the adjudicatory period. (*See* R. 337, 341.) Although Claimant is correct that a treating doctor is not required to perform a contemporaneous examination when he completes a form that contains his opinion, the ALJ may deny substantial weight to a physician who has not, or has infrequently, examined the claimant. *See* 20 C.F.R. § 404.1527(c)(1), (c)(ii). These were therefore proper reasons for the ALJ to assign Dr. Weller's opinion lesser weight here.

13

The second and related reason noted by the ALJ was that, in the absence of examination results, Dr. Weller's opinion appeared to rely largely on Claimant's subjective report of her condition. (R. 27; *see also* R. 643–46). Although Claimant is correct that a treating physician may consider a claimant's subjective reports, the regulations require the ALJ to consider the "[s]upportability" of the treating physician's opinion when determining what weight to give it. 20 C.F.R. § 404.1527(c)(3). The ALJ may give less weight to an opinion that is not supported by "relevant evidence" such as "medical signs and laboratory findings." *Id.* In fact, a treating physician's opinion *must* be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to merit controlling weight. SSR 96-2p(3).[6]

The ALJ's conclusion that Dr. Weller's opinion relied largely on Claimant's subjective reports was a reasonable assessment of it. As explained above, Dr. Weller had not done a physical examination of Claimant for at least several years prior to giving his opinion, which deprived him of at least concurrent objective evidence on which to base his findings. (*See* R. 337, 340–41, 347–51.) Nor did Dr. Weller point to substantial evidence from other medical doctors or visits to support his findings. Although he noted a few limited clinical findings, including an MRI of Claimant's lumbar spine that showed tenderness and degenerative arthritis, he did not explain when these findings were noted or why they supported his diagnosis of such severe physical limitations. (R. 643.) Lacking objective support, Dr. Weller's opinion contains largely unverifiable findings, such as that Claimant's pain was chronic, constant, and caused by any motion—sitting, standing, or walking. (R. 644.) Moreover, as the ALJ pointed out, Dr. Weller's progress notes demonstrate that he completed his Questionnaire in 20 minutes and with Claimant's assistance. (R. 337; *see also* R. 27–28.) These notes also suggest that Dr. Weller's opinion took Claimant at her word that one of her medications was causing weight gain at the

---

[6] SSRs 96-2p and 96-6p were rescinded on March 27, 2017 but applied to the ALJ's decision.

time. (*Compare* R. 337 *with* R. 644.) In sum, the ALJ's conclusion that Dr. Weller's opinion relied largely on Claimant's subjective reports rather than on objective evidence was another proper reason to give his opinion lesser weight.

The third and related reason noted by the ALJ was that Dr. Weller's opinion was inconsistent with substantial evidence in the record. (R. 28.) Not only do the regulations permit an ALJ to give less weight to an opinion that is not consistent with the record as a whole, 20 C.F.R. § 404.1527(c)(4), they *insist* that a treating opinion be denied controlling weight if it is inconsistent with other substantial evidence in the record, SSR 96-2p(4). Here, Claimant argues that the ALJ "did not explain what objective findings were inconsistent with Dr. Weller's opinion" and therefore failed to build a "logical bridge from the evidence to her conclusions." [EFC No. 22 at 7.] However, that is not a reasonable reading of the ALJ's opinion. The ALJ properly supported her conclusion by pointing to specific and substantial evidence in the record that plainly undermines Dr. Weller's findings.

For example, the ALJ said that Dr. Weller's assessment of marked bilateral limitations was inconsistent with the record, which demonstrates that Claimant does not have a medically determinable upper extremity impairment and consistently demonstrates normal manipulative abilities in physical examinations. (R. 28; *see also, e.g.*, R. 321, 327–29, 530, 567, 569, 661.) The ALJ noted that diagnostic imaging findings from 2012 showed only minimal limitations. (R. 24; *see also, e.g.*, R. 316.) She pointed out that an MRI of Claimant's lumbar spine from January 2012 showed no disc herniation or stenosis, which contradicts Dr. Weller's assessment of Claimant's lumbar spine. (R. 24; *see also* R. 321.) She noted that an MRI of Claimant's cervical spine from February 2012 showed no acute fracture or posttraumatic subluxation. (R. 24; *see also* R. 325.) In fact, the ALJ noted as being inconsistent with Dr. Weller's opinion

15

Claimant's 2014 adjudication, which found that her physical impairments were "not work preclusive" and after which she did not suffer further physical impairment. (R. 24.)

Moreover, the ALJ noted that Dr. Choi, who observed Claimant's negative imaging studies and largely normal physical examination findings in 2014, advised against continued treatment due to "'no indications for diffuse pain other than her uncontrolled depression.'" (R. 24–25 (quoting R. 329).) She noted that Claimant's State agency internal medicine examinations, performed on December 22, 2014 and July 25, 2015, resulted in largely normal findings. (R. 25; *see also* R. 527–32, 564–69.) She further noted that Claimant's most recent diagnostic imaging, taken in August 2015, showed only minimal disc space loss, minimal grade 1 anterolisthesis, stable and early degenerative changes, and only mild to moderate disc disease, which contradicts Dr. Weller's assessment of Claimant's lumbar spine. (R. 25; *see also* R. 716–20.) She noted that Claimant's initial rheumatology evaluation with Dr. Drevlow found no definite evidence of an inflammatory arthropathy or stigmata of a systemic connective tissue disease. (R. 25; *see also* R. 699.) She also noted that, on another occasion, Dr. Drevlow found no active swelling, tenderness, or synovitis of any joint, no soft tissue nodules, and only mild osteoarthritis of the spine. (R. 25; *see also* R. 673–74.) In sum, the ALJ properly supported her conclusion that Dr. Wellers opinion was inconsistent with substantial evidence in the record by pointing to specific inconsistencies that plainly undermine Dr. Weller's findings.

The fourth and final reason noted by the ALJ was that Dr. Weller's opinion was inconsistent particularly with the course of treatment that he pursued. (R. 28.) The ALJ noted that Claimant went much of the adjudicatory period without receiving any further medical treatment for her physical symptoms, yet, as described above, consistently demonstrated only moderate symptoms in her physical examinations. (R. 25.) Claimant argues that the ALJ should

16

have cited medical evidence indicating what treatment would have been appropriate before finding Dr. Weller's course of treatment to weigh against his own opinion. [EFC No. 22 at 9.] The ALJ, however, cited medical evidence indicating that modest treatment *was* the proper course given Claimant's modest physical symptoms: she noted that Dr. Catherine Choi, who saw Claimant in March 2014, advised against continued treatment for Claimant's physical symptoms because she found "no indications for diffuse pain other than her uncontrolled depression." (R. 329; *see also* R. 25.) Claimant herself argues that modest treatment for her physical symptoms was reasonable precisely because these symptoms were exacerbated by her *mental* symptoms. [EFC No. 22 at 9.] Thus, the ALJ properly concluded that Claimant's routine course of treatment was inconsistent with the severe limitations that Dr. Weller assessed in his opinion.

For these reasons, the ALJ's conclusion that Dr. Weller's opinion merited little weight is supported by such relevant evidence as a reasonable mind might accept as adequate and to which the ALJ properly articulated a logical bridge. This conclusion is affirmed.

### C. Other Issues

Because remand is required on the basis of Dr. Kovari's opinion, the Court will not address Claimant's remaining two arguments: that the ALJ's RFC determination is not supported by substantial evidence and that the ALJ improperly discounted Claimant's subjective reports of her symptoms. Upon remand, should the ALJ determine that Dr. Kovari's opinion deserves greater weight, it goes without saying that this decision should then be incorporated into the ALJ's RFC determination. A determination that Dr. Kovari's opinion deserves greater weight also may impact the ALJ's evaluation of Claimant's subjective reports given the particularly important role they play in assessing mental conditions. The Court leaves these issues for the ALJ to determine.

Finally, this Memorandum and Order should not be construed to indicate that the Court believes Claimant was disabled between April 17, 2014 and May 12, 2016, or that Dr. Kovari's opinion should receive greater weight. To the contrary, the Court has not formed any opinion in this regard and leaves these issues to be determined by the Commissioner after further proceedings consistent with this Memorandum Opinion and Order.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment is granted [ECF No. 22] and Commissioner's Motion for Summary Judgment [ECF No. 26] is denied. The decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 2, 2017